IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LESTER A. YORGEY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| MICHAEL J. ASTRUE, Commissioner | : | |
| of Social Security, | : | |
| Defendant. | : | No. 11-5095 |
| | : | |

**MEMORANDUM ON REQUEST FOR REVIEW**

**Baylson, J.**                                                                                       February 28, 2012

Claimant Lester A. Yorgey ("Yorgey") seeks judicial review of the decision by the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33.  After careful consideration of all the relevant facts and circumstances, and for the reasons explained below, Yorgey's request for review of the August 10, 2009 decision of the Administrative Law Judge ("ALJ") is DENIED insofar as it seeks judgment as a matter of law and GRANTED insofar as it seeks vacatur and remand for further proceedings consistent with this opinion.

**I.      Background and Procedural History**

On December 14, 2004, Yorgey filed an application for disability insurance benefits, alleging disability beginning on April 4, 2004 due to a combination of physical and mental impairments. [Tr. 18]  Yorgey was 33 years old on the date he alleges he became disabled and has significant past work experience as a concrete construction worker. [Tr. 256, 313] He asserts that he suffers from a combination of mental disorders as well as back and other pains related to

lumbar degenerative disorder. [Tr. 134-151]

The state agency denied Yorgey's application on April 6, 2005. [Tr. 18]  At Yorgey's request, a hearing was held on April 22, 2005 before ALJ Suanne S. Strauss regarding Yorgey's application for benefits.  Yorgey was represented by counsel and testified on his own behalf; a vocational expert (VE) also testified. [Tr. 18]  At the hearing, Yorgey amended his application to request a "closed period" of disability, beginning with the same April 4, 2004 "onset" date but ending on May 16, 2006.[1]  [Tr. 18]

On May 22, 2007, ALJ Strauss issued an unfavorable decision regarding Yorgey's application.  Among other things, ALJ Strauss determined that Yorgey's drug abuse was material to a finding of disability, and absent consideration of his drug abuse, his remaining limitations were not disabling. [Tr. 47]  She further concluded, pursuant to the VE's testimony, that Yorgey was capable of performing a range of light exertional work, including work as an assembler, garment sorter/folder, visual inspector, or hand packer. [Tr. 54]

Yorgey sought review of the ALJ's decision before the Appeals Council.  On March 18, 2009, the Appeals Council vacated the ALJ's decision and remanded for further proceedings.  In its written order, the Appeals Council noted that certain medical opinions, including a mental status examination conducted in 2005, a State Agency medical consultation also conducted in 2005, and a physical therapist's opinion in 2006, were not adequately evaluated in the ALJ's decision. [Tr. 97]  The order instructed that, on remand, the ALJ should (1) give further consideration to the treating and examining source opinions, (2) further evaluate Yorgey's mental impairments, (3) further consider Yorgey's maximum RFC and explain the rationale behind that

---

[1] The record indicates that Yorgey was incarcerated after May 16, 2006 and subsequently returned to work as a mason upon his release. [Tr. 594, 597]

determination, and (4) if warranted by the expanded record, obtain supplemental evidence from a VE to clarify the effects of Yorgey's limitations on his occupational base. [Tr. 98]

The case was reassigned to ALJ Sylvester A. Puzio, who held a new hearing on the matter on June 19, 2009. [Tr. 18]  Again, Yorgey was represented by counsel and testified on his own behalf; a VE did not testify. [Tr. 18]  On August 10, 2009, ALJ Puzio issued a written decision denying Yorgey's application for benefits.  The ALJ found that Yorgey had severe impairments of lumbar degenerative disc disease, bipolar disorder/depression disorder, and substance abuse disorder. [Tr. 21]  He further determined that Yorgey's combined mental impairments met the criteria for sections 12.04 and 12.09 of 20 C.F.R. § 404, Subpt. P, App. 1, though his physical impairments did not satisfy the criteria for section 1.04.  The ALJ found that the substance abuse disorder was a material factor contributing to these findings. [Tr. 21]

The ALJ defined Yorgey's RFC during the closed period as the capacity "to lift and carry up to 20 pounds occasionally and 10 pounds frequently; [as well as] simple, repetitive work with no sustained public contact and no mandated teams, and it must be as self-paced as possible so that any periods of inattention could be made up by the end of the work day." [Tr. 25]  This was the same RFC articulated by the first ALJ at the first hearing. [Tr. 51]  Finally, ALJ Puzio determined that, pursuant to the VE's testimony at the first hearing, Yorgey's RFC permitted him to perform a limited range of light exertional work.  Although he could not perform his past relevant work, he could perform other jobs available in significant numbers in the national economy; thus, Yorgey was not "disabled" under the Act. [ Tr. 27-28]

Yorgey timely filed a request for review of the second ALJ decision, which the Appeals Council denied. [Tr. 7-9]  Yorgey then filed the instant action, requesting review of the Commissioner's denial of his disability claim. [ECF No. 1]  On October 31, 2011, he moved for

summary judgment, and on December 5, 2011, the government submitted its response. [ECF Nos. 7, 8] Yorgey replied on December 8, 2011. [ECF No. 9]

## II. Legal Standards

### A. Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. §§ 405(g), 1383(c)(3). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.

### B. Standard of Review

On judicial review of the Commissioner's decision, the Commissioner's findings of fact, "if supported by substantial evidence," are conclusive. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 633 (3d Cir. 2010) (internal quotation marks omitted). It is a standard requiring "less than a preponderance of the evidence but more than a mere scintilla." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In reviewing the record for substantial evidence, however, the Court must "not weigh the evidence or substitute [its own] conclusions for those of the fact finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted).

The Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C. Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner of the Social Security Administration has promulgated regulations requiring a five-step sequential analysis to determine the eligibility of claimants for benefits. First, if the claimant is engaged in substantial gainful activity, the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if the claimant is not suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities, the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is suffering from severe impairments that meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claim is approved. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the RFC to meet the physical and mental demands of her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). Fifth, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform (considering her RFC, age, education, and past relevant work experience), the claim is approved. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Finally, if the record contains medical evidence of drug addiction or alcoholism, the regulations require a special, additional assessment of the claim. In such circumstances, the ALJ must determine whether the claimant's drug addiction or alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. Drug or alcohol use qualifies as a "contributing factor material to the determination of disability" if, in the absence of that use, the claimant's remaining physical and mental limitations would not be disabling. Id. If the ALJ

finds that the claimant's remaining limitations would not be disabling, the claimant is not disabled under the Act.

### III. Yorgey's Contentions

Yorgey challenges the ALJ's decision on multiple grounds. First, Yorgey claims that the ALJ failed to evaluate medical evidence in the record demonstrating that he suffers from the additional mental impairment of a personality disorder. The ALJ's disability analysis from step 2 onwards was therefore flawed because, for example, a personality disorder can be so severe as to qualify a claimant as disabled under Listing 12.08. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08. Relatedly, Yorgey asserts that the ALJ's RFC and subsequent hypothetical to the VE, as well as the assessment of the materiality of Yorgey's substance abuse, did not properly account for the effects of the personality disorder.

Yorgey next challenges the lack of weight afforded to the medical opinions of treating physical therapist Michael Hughes and examining State Agency psychologist Dr. Daniel Schwarz. Yorgey contends that these professional opinions about his impairments were not properly credited, whereas the opinion of the non-examining State Agency medical examiner Dr. Mark Hite was improperly afforded controlling weight. Yorgey further notes that even Dr. Hite's opinion acknowledged a diagnosis of personality disorder and the presence of a "moderate limitation" regarding the ability "to accept instructions and respond appropriately to criticism" [Tr. 362]—factors that, according to Yorgey, were not reflected in the ALJ's decision.

Finally, Yorgey argues that the ALJ improperly rejected Yorgey's own credibility, especially regarding Yorgey's subjective reports of pain and other limitations related to his back injury.

**IV.     Discussion**

    **A.     The Personality Disorder**

Yorgey first argues that the ALJ's factual findings, as rendered in his written decision, do not properly account for evidence that Yorgey had a personality disorder.  Yorgey emphasizes that multiple medical reports in the record, including Dr. Hite's opinion [Tr. 348, 361] and Yorgey's treatment records from at least two different hospitals [Tr. 174, 185], reflect diagnoses of a personality disorder in addition to Yorgey's bipolar, depressive, and substance abuse diagnoses.  However, the ALJ did not mention the personality disorder as a "severe impairment" at step 2, did not analyze whether the personality disorder met the requirements of Listing 12.08 at step 3, and did not otherwise account for or explain away the effects of the personality disorder on Yorgey's limitations.

As a threshold matter, the Court notes that the ALJ is "not expect[ed] . . . to make reference to every piece of relevant information" in the record.  Hur v. Barnhart, 94 Fed. App'x 130, 133 (3d Cir. 2004).  On the other hand, in determining whether a claimant's impairments are of sufficient medical severity to qualify the claimant as disabled, the ALJ must, among other things, "consider the combined effect of all of [a claimant's] impairments."  20 C.F.R. § 404.1523.

Here, although the personality disorder appears in multiple places in Yorgey's medical records, there are myriad places where it does not.  For instance, none of the following mental health records diagnose him as having a personality disorder: (1) the State Agency psychologist's opinion [Tr. 311-16], (2) Yorgey's mental health records from the time he was incarcerated in 2005 [Tr. 393-405], (3) the psychiatric evaluation conducted at Abington Memorial Hospital in 2006 [Tr. 451-58], or (4) the medical form submitted for Yorgey's application for state welfare

-7-

benefits [Tr. 217]. Furthermore, in the places it does appear, the personality disorder is generally mentioned only briefly.

In light of this record, it is arguable that a considered determination by the ALJ that Yorgey did not suffer from impairments due to a personality disorder would not lack substantial evidence. The Court need not rule on that question at this time, however, because the ALJ's opinion lacks altogether a discussion of the personality disorder. Consequently, the Court lacks a basis upon which to properly determine whether the ALJ accidentally overlooked the personality disorder, considered it and rejected it, or otherwise factored it into the analysis without describing its impact.

Moreover, the only medical opinion in the record that the ALJ gave "significant weight"—that of Dr. Mark Hite—did diagnose the personality disorder, further underscoring the need for the ALJ to explain his decision-making process. [Tr. 348, 361] Without understanding whether and to what extent the ALJ considered evidence of the personality disorder, the Court is unable to determine whether any of the related portions of the ALJ's decision—specifically, its findings of severe impairments at step 2, analysis of listing requirements at step 3, analysis of Yorgey's RFC and the VE's related testimony at step 5, and determination that Yorgey's drug abuse materially contributed to the disability determination—were supported by substantial evidence.[2]

Nor, in these circumstances, would it be appropriate for the Court to enter a finding

---

[2] The Court reemphasizes, however, that even if the ALJ concludes that Yorgey's personality disorder qualifies as a severe impairment, the ALJ is not precluded from also determining that Yorgey's drug abuse materially contributed to the personality disorder. In other words, the remand ordered herein should not be interpreted as implying that a finding of a personality disorder would necessarily entitle Yorgey to benefits.

regarding the personality disorder—rather, in light of the conflicting medical evidence in the record, the ALJ should be permitted to enter a finding in the first instance. Accordingly, the Court will remand so that the ALJ can clarify his findings and, if appropriate, convene a hearing to elicit new VE testimony and reapply the relevant regulations.[3]

### B.      The Medical Opinions

Yorgey argues that the opinions of treating physical therapist Michael Hughes and examining State Agency psychologist Dr. Daniel Schwarz were not accorded sufficient weight, whereas Dr. Mark Hite's non-examining opinion was improperly accorded controlling weight.

In evaluating a disability claim, the ALJ must determine what weight to give the opinions of treating, examining, and non-examining sources by considering several factors.[4] Solter v. Comm'r of Soc. Sec. Admin., No. 09-2821, 2010 WL 3620213, at *7 (E.D. Pa. Aug. 6, 2010); see 20 C.F.R. §§ 404.1527(d), 416.927(d). The opinions of treating physicians should be given great weight, but an ALJ may reject a treating physician's opinion outright on the basis of contradictory medical evidence. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). A treating

---

[3] Yorgey also contends that a "moderate limitation" in Dr. Hite's report regarding Yorgey's ability "to accept instructions and respond appropriately to criticism" [Tr. 362] was not properly reflected in the RFC. The Court is inclined to think that the RFC, which limited Yorgey to "simple, repetitive work with no sustained public contact and no mandated teams, and [that is] as self-paced as possible so that any periods of inattention could be made up by the end of the work day," adequately accounted for this moderate limitation. [Tr. 25] However, because the ALJ did not explain whether the RFC was intended to incorporate the limitation or exclude it, the ALJ should also clarify his assessment of the RFC on remand.

[4] An examining or "non-treating" source is a physician, psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. Opinions from examining sources do not carry as much weight as treating source opinions, but are generally entitled to more weight than non-examining sources. See Solter, 2010 WL 3620213, at *7. A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant but provides a medical opinion. 20 C.F.R. §§ 404.1502, 416.902.

physician's opinion is accorded controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. Smith v. Astrue, 359 Fed. App'x 313, 316 (3d Cir. 2009); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In determining the weight, if any, to accord the opinion of a non-controlling medical source, the ALJ considers: (1) the nature of the examining relationship; (2) the nature of the treating relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the source offering the opinion. Irelan v. Barnhart, 82 Fed. App'x 66, 71 (3d Cir. 2003) (citing 20 C.F.R. §§ 404.1527, 416.927); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). The ALJ may not reject a physician's findings unless he first weighs the findings against other relevant evidence and explains why certain evidence has been accepted and other evidence rejected. Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).

The Court turns now to the question of whether substantial evidence supports the ALJ's consideration of the opinions of treating source Michael Hughes (who assessed Yorgey's physical impairments), and examining source Dr. Daniel Schwarz and non-examining source Dr. Mark Hite (who assessed Yorgey's mental impairments).

    1.    Physical Therapist Michael Hughes

Hughes, a certified physical therapist, conducted physical therapy sessions with Yorgey on many occasions, including in January 2005 [Tr. 338], February 2005 [Tr. 322-24], March 2005 [Tr. 319-21, 329-33], April 2005 [Tr. 483-84], May 2005 [Tr. 481-82], and June 2005 [Tr. 496-99]. In the reports from those sessions, Hughes described Yorgey as being limited to 2-3 hours or less of sitting, 3-4 hours or less of standing, and 1-2 hours or less of performing

repetitive tasks.  [See, e.g., Tr. 321, 325, 495]  Hughes also repeatedly noted that Yorgey's pain levels exceeded a rating of 5 out of 10 or higher. [See, e.g., Tr. 322 (pain levels at 5/10 at best, 8-9/10 at worst); Tr. 338 (pain levels at 6/10 at best, 10/10 at worst)]

The ALJ accorded no significant weight to Hughes' opinion because it was made with "obvious emphasis placed on claimants subjective complaint of pain which far exceed what the diagnostic studies of record could reasonably be expected to produce." [Tr. 27]  The ALJ also pointed to conflicting evidence in the record that, in July 2005, claimant had only rated his pain as 2 out of 10 and had no decrease in his range of motion.

As stated above, the opinion of a treating physician ordinarily must be given great weight, but a medically-unsupported opinion or a opinion that is contradicted by other evidence need not be credited.  Here, insofar as Hughes described Yorgey's limitations regarding sitting, standing, and performing repetitive tasks, there is substantial evidence that such limitations were principally based on Yorgey's subjective complaints, not on objective observations or tests.  For example, on January 20, 2005, a day when Yorgey described his pain as severe—6/10 at best, 10/10 at worst—Hughes' only conclusions based on "test, observation and measurement" were that Yorgey exhibited "no abnormal muscle tone," "good lumbar spinal mobility," and "[n]o restriction of hips, knees or ankles." [Tr. 338]  Hughes further noted that Yorgey's ankle DTRs, gait, locomotion, and back, postural alignment, integumentary integrity, and ventilation/relaxation were all "good," "normal" or otherwise unremarkable. [Tr. 338]  The only physical impairments noted at any point were a "weakness for left hamstring knee flexion strength" and a trunk flexion strength rated 3 out of 5. [Tr. 338, 340]  All of Yorgey's other muscle strengths were rated at least a 4 out of 5. [Tr. 340]  Accordingly, though Hughes did not explicitly identify the grounds for his conclusions regarding Yorgey's functional limitations, the

most reasonable inference is that he relied on Yorgey's self-reported levels of pain.[5]

Ordinarily, Hughes' reliance on Yorgey's subjective pain would not, alone, be an adequate basis to decline to accord significant weight to his medical opinion—indeed, ALJs are not free to disregard a patient's subjective complaints of pain. See, e.g., Green v. Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984) (holding that subjective complaints of pain may not be discounted without contrary medical evidence). Here, however, the record reflects that Yorgey abused drugs and repeatedly exhibited drug-seeking behavior such as emphasizing his pain to obtain prescriptions or declining treatment when narcotic medications were denied to him. [See, e.g., Tr. 156, 157, 159, 161, 268, 407, 419, 467] Although there is also medical evidence that he suffered actual physical impairments that might reasonably be expected to produce some pain, including a herniated disc, this Court is not permitted to "weigh the evidence or substitute [its own] conclusions for those of the fact finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). Rather, the Court is limited to the question of whether there is "less than a preponderance of the evidence but more than a mere scintilla" that Yorgey's statements to Hughes were incredible because he sometimes manipulated his descriptions of pain and other symptoms to medical professionals. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). To that inquiry, the Court can only answer in the affirmative. Therefore, the Court must not disturb the decision of the ALJ declining to credit Hughes' opinion regarding Yorgey's functional limitations.

---

[5] This example is merely illustrative of the nature of Hughes' reports; there are other instances in Hughes' records in which Yorgey reported high levels of pain despite tests and observations finding normal physical capabilities. [See, e.g., Tr. 322, 324, 329, 482]

2.      Agency Psychologists Dr. Daniel Schwarz and Dr. Mark Hite

On March 8, 2005, Dr. Schwarz conducted a clinical psychological disability examination of Yorgey. [Tr. 311-18]  In his written evaluation of March 14, 2005, Dr. Schwarz noted that his information was "garnered directly from the claimant" as well as from various medical records. [Tr. 311]  Dr. Schwarz concluded that Yorgey had moderate limitations in ability to understand, remember, and carry out short/simple instructions, and marked restrictions in his ability to understand, remember, and carry out detailed instructions.  He further concluded that Yorgey had moderate limitations in his ability to interact appropriately with the public and marked limitations in his ability to interact appropriately with co-workers and supervisors.  Finally, Yorgey had marked limitations in his ability to make judgments on simple work-related decisions and to respond appropriately to changes in a routine work setting. [Tr. 317]  Dr. Schwarz also deemed that drug use would likely impact Yorgey's mood, stability and cognitive capacity in unspecified ways.  [Tr. 317]

The ALJ accorded no significant weight to Dr. Schwarz's opinion. [Tr. 23]  He reasoned that the opinion was based only on a one-time evaluation and was overly focused on Yorgey's subjective complaints.  He also deemed the opinion incredible insofar as it contained internal inconsistencies and mistakenly concluded that Yorgey's polysubstance abuse was "in remission." [Tr. 23]

On the other hand, the ALJ accorded significant weight to the opinion of non-examining Agency psychologist Dr. Hite, who issued a report on March 25, 2005 concluding that Yorgey exhibited no marked limitations but five moderate limitations.  The moderate limitations noted by Dr. Hite were Yorgey's ability to understand, remember and carry out detailed instructions (#1-2), Yorgey's ability to interact appropriately with the general public (#3), Yorgey's ability to

-13-

accept instructions and respond appropriately to criticism from supervisors (#4), and Yorgey's ability to respond appropriately to changes in a work setting (#5). [Tr. 361-62]  The ALJ determined that Dr. Hite's opinion merited significant weight because it was "consistent with the evidence of record considered in its entirety." [Tr. 27]

       The Court must carefully scrutinize a situation in which, as here, the ALJ discredited an examining psychologist but significantly credited a psychological opinion that involved no examination.  As the Commissioner has ruled, however, "[i]n appropriate circumstances, opinions from [non-examining] State agency medical and psychological consultants . . . may be entitled to a greater weight than the opinions of treating or examining sources."  SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996).  One such circumstance, identified by the Commissioner, is present when a non-examining State agency psychologist's opinion "is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information that what was available to the individual's treating [or examining] source." Id.

       That is precisely the situation here.  As Yorgey admitted in his brief, Dr. Schwarz's report suggests that he was not supplied with the records from a psychiatric hospitalization in September 2004. [Tr. 184-86]  The records from that hospitalization were directly relevant to Dr. Schwarz's evaluation and would have revealed, among other things, that Yorgey had recently been using drugs. [Tr. 184]  Dr. Schwarz specifically noted in his report that Yorgey's mood, stability, and cognitive capacity might be different when using drugs; presumably, then, if Dr. Schwarz had been aware of the severity and ongoing nature of Yorgey's drug use, he would have adjusted his diagnosis of Yorgey's limitations and/or his explanation of whether drug use contributed to those limitations. [Tr. 318]  In these circumstances, the ALJ had substantial

evidence to determine that Dr. Schwarz's opinion was unhelpful to the disability determination.

Dr. Mark Hite's opinion about Yorgey's mental impairments expressly reviewed Dr. Schwarz's opinion as well as "all of the medical and non-medical evidence in the claims folder," including records of "one hospitalization due to [Yorgey's] mental impairments," i.e., the September 2004 psychiatric hospitalization. [Tr. 363] Dr. Hite noted that Yorgey had "recently been involved in drug and alcohol abuse after 7 years clean and sober," that "[w]hen he is not using he appears to be functional," and that Yorgey's statements throughout the record were "partially credible." [Tr. 363] There is substantial evidence in the record to support these conclusions and, in the circumstances presented here, the ALJ was permitted to credit Dr. Hite's opinion over that of Dr. Schwarz.[6]

### C.     Yorgey's Credibility

Yorgey claims that the ALJ improperly discounted his credibility in ruling that he was not entitled to benefits. Specifically, Yorgey emphasizes case law stating that the "principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability" because "malingering and manipulation" may be symptoms of a mental illness that "support, rather than contradict" a finding of a mental impairment. Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000).

This may be so, but there is no reason to think that such malingering and manipulation is also probative of a claimant's physical impairments. Thus, to the extent that the ALJ discounted Yorgey's reports to doctors about the severity of his physical impairments due to Yorgey's

---

[6] Notwithstanding the Court's holding on this issue, the ALJ should give the medical opinions in the record further consideration on remand pursuant to the Court's instruction in Part IV.A of this opinion.

history of drug-seeking behavior, that decision was supported by substantial evidence, as already explained above.

On the other hand, to the extent that the ALJ discounted Yorgey's testimony at the disability hearing or his reports about his <u>mental</u> symptoms without first considering the possible effects of the alleged personality disorder on his appearance and actions, the ALJ should reconsider or better explain his credibility determination on remand after entering findings about the personality disorder as directed in Part IV.A.

## V.     <u>Conclusion</u>

For the foregoing reasons, Yorgey's Request for Review is DENIED insofar as it seeks judgment as a matter of law and GRANTED insofar as it seeks vacatur for further proceedings consistent with this opinion.  The August 10, 2009 decision of the ALJ is AFFIRMED in part and VACATED in part, and the case is REMANDED, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

An appropriate Order follows.

O:\CIVIL 11-12\11-5095 Yorgey v. Astrue\Yorgey 11-5095 - Memo SS Appeal.wpd